DeJuan Haynes v. Brian Minnehan, et al. Please proceed. My name is Gina Messmer, and on behalf of Plaintiff DeJuan Haynes, the fact that the civil rights violation in this case was relatively minor does not mean that it's not important. Because a person's right to be free of an illegal seizure is important. There's an indignity to being handcuffed. There's an indignity to being treated like a criminal when it's clear that there's nothing criminal going on. And the Fourth Amendment doesn't allow that kind of an indignity when it's not at all necessary. And because there are fact questions in this case about whether the seizure of Mr. Haynes and the handcuffing and the extent of the stop were reasonable and necessary, this Court should reverse the District Court's grant of summary judgment and remand for further proceedings. So the defense in this case is that there was suspicion of drug dealing, and therefore it's okay for the officers to put Mr. DeJuan Haynes in handcuffs. The problem with this is that the defense ignores everything that happened after the officers actually interacted with Mr. Haynes. It's not about the original stop. I don't contest that there was reasonable suspicion for the original stop of Mr. Haynes based on an undercover officer's observations of what he thought was a hand-to-hand drug deal. That wasn't correct. It was an incorrect interpretation of what happened. Instead, Mr. Haynes had just given change to somebody. He was just being a nice guy. So I don't dispute that the original stop was okay. But then everything that happened after that pretty much immediately dispelled any concern that this had been a hand-to-hand drug deal and that anything illegal was happening. And Terry, for this kind of reasonable suspicion stop, requires that the stop be related in scope and not be true intrusive. And it was too intrusive because these officers got a lot of information right away from Mr. Haynes that established he was just being a nice guy and he should have been let go. And to go through some of those facts, there aren't really all that many disputed facts in this case because everything was recorded on video. It's more, I think, the inferences that are drawn from those facts. There's no dispute that Mr. Haynes stopped right away when the officers did a U-turn to follow him and that he put his hands up, showed his hands to make sure the officers knew he didn't have any weapon or anything like that, that he wasn't a threat. He provided an explanation for the hand-to-hand exchange he'd had. He was very friendly, very cooperative. The officers acknowledged that in their depositions. The officers asked him questions about where he lived, what he was doing over there, and he answered all those questions very nicely. They asked him for his identification. And out of his own pocket, he pulls a Visa card and a Costco card with his photo on it. And then he also gives Officer Minahan, who was on the passenger side, that officer had his insurance that had his name on it. So there was nothing pinky. Is there anything to be taken from the fact that he couldn't immediately find his driver's license in terms of the ability of the officers to extend the investigation? No, Your Honor. I don't think that that gives cause to extend the investigation because the investigation is into whether there's drug dealing going on. There's nothing about the fact he didn't have his license that gives any kind of reasonable suspicion or lends credence to the idea that there was a drug deal. Especially when he does correctly identify himself and provides these other legitimate forms of identification, even if it's not a state-issued ID. But there was other evidence to corroborate he is who he's saying he is. And so without there being something hinky here, that doesn't give the officers reason to extend the stop just to verify his identification. There needs to be some suspicion about who he is in order to extend the stop to verify his identification. And that wasn't present here. And the officers, they recognized that it wasn't present. Officer Steinkamp, in his deposition, recognized that even before he got Dwan Haynes out of the car, so before Dwan Haynes was handcuffed, Officer Steinkamp admitted there was nothing that indicated to him there was a safety risk or any concern like that. That testimony alone should be enough to defeat summary judgment in this case. Counsel, isn't the bigger concern here what happened to Mr. Haynes during the extension rather than the extension itself, the handcuffing? It is, Your Honor. It is the handcuffing itself. And I acknowledge Mr. Haynes, because he was over the top cooperative here, he consented to a search of his pockets and even like unbuckling his pants. He consented to that part, but he did not consent to being put in handcuffs. And that's kind of the underlying concern is that once you're in handcuffs, it makes you more likely to consent to things you don't really have to consent to. But it puts you in this kind of submissive position where you go along with intrusions of your Fourth Amendment rights. So it is the handcuffing that's the biggest concern here. But, you know, they kind of go hand in hand. He was handcuffed and kept there for too long while he was handcuffed. And another thing I wanted to emphasize is that, you know, I don't think he should have been handcuffed at all, because I think the reasonable suspicion had been dispelled before he got out of the car. But even if the court were to credit and say, okay, we'll let them get him out, put him in handcuffs and frisk him, because there was some suspicion of a drug deal. Well, he's fully searched and then he's still left in handcuffs while this officer goes back to the car to run his name and see if there's a warrant or whatever else. So after this search has been completed, there's just nothing to go on to say that Mr. Haynes was any kind of safety risk. And that's what there needs to be. Counsel, describe the goal of your claim a bit to me. Are you really after these officers? Are you after the training or lack of training that takes place by the municipality? I think I've got a fair claim against the officers themselves. But I guess bigger picture wise, yes, I do. My concern here is that these officers has not been properly trained. They think they can put somebody in handcuffs anytime they interact with someone where there's reasonable suspicion for anything at all, regardless of the dangerousness of it. And this is something I did find in the discovery in this case. And a couple instances are cited to the court where people, these officers in particular, and I'm sure other officers are putting people in handcuffs when they shouldn't be. And then there's the risk of these people can be mistreated or their rights are compromised. And so that is the overarching. That's why this case has been brought, is to make sure the police station knows where the limits are in the Fourth Amendment in terms of handcuffing and is teaching its officers that so that we don't have these repeated violations of people's Fourth Amendment rights. Because the way these officers are handling it, it's just very casual, regular violations. And those do add up and they can lead to worse interactions with the community. And that's kind of the bigger picture on why this is important. But yes, I do think that in this case, though, these officers still have liability for failing to let him out of handcuffs because that is the clearly established law. If there's no safety risk, you can't be handcuffing people. Does the record show how long the handcuffing itself lasted? Yes. I believe it was about three minutes and 20 seconds in where they got him out of the car and put him in handcuffs. And he was let out of cuffs around the 10 minute and 50 second mark. So it was about seven and a half minutes that he was in handcuffs. And for about four minutes of that time, he's handcuffed with his pants unbuckled, just standing there in this busy intersection, too. So it's about four minutes between when the search of him ends and when he's let out of handcuffs, but seven minutes, seven and a half minutes total. Counsel, I guess the argument is that this was a suspected hand-to-hand drug transaction that perhaps had taken place on the side of the street, correct? That is correct. Okay, and so there was a search of Mr. Haynes. Correct. No drugs were found. Right. What about cash? He did have some cash on him, but I don't think it was anything that the officers found was suspicious. And the officers agreed in their depositions that all the things they're looking for in a drug stop, they didn't see anything. They didn't see anything in the car when they looked with their flashlights that indicated drugs, nothing in terms of nervous behavior, furtive movements, that was suspicious. His explanation jived with, you know, was reasonable, and the way he delivered that explanation was reasonable. And the officers acknowledge in depositions that it was pretty much immediately apparent to them that there wasn't anything going on. This was going to be a short stop, as one of the officers said. So I don't think that after the fact, looking and saying, oh, he had some singles in his pocket is enough to say there was suspicion of drug dealing when the officers themselves recognized. And you may have answered this, and I was making some notes, but is the claim really as to the initial handcuffing or that he remained handcuffed too long? That is, there was arguably suspicion of a hand-to-hand drug deal, and so investigation takes place, and at some point it's reasonably clear that that's not what happened, so the man's cuff should come off. Is that the claim? My claim is that he should never have been handcuffed because the suspicion was dispelled before he was taken out of the car. But even kind of as a secondary position, I do think he was handcuffed for too long. I think if the facts were taken in the light most favorable to defendant, you could say it was at the point where the officers completed the search that all suspicion had been dispelled, and then at that point he should have been taken out of handcuffs, and he was still left in for several more minutes. So I think it's either-or. I think it really should have never happened from the get-go, but in any event, in the middle of the stop, I can't think of any facts the defendant could rely on to say there was any legitimate concern about a safety risk after he had been searched and was taken out of the car and there was another officer left with him. And that's something I wanted to touch on with the district court ruling. I was frustrated because the facts were taken in the light most favorable to defendant. The facts in the district court ruling were copied from the defense statement of facts. None of the facts that I submitted were cited, and there were actually facts in the district court's ruling that the district court cited as undisputed facts that were disputed. And those are the facts about whether a traffic violation justified this stop because there was a crack in Mr. Haynes' windshield. That is disputed, about whether there was a reasonable suspicion for a traffic stop based on the windshield crack, because the statute that the defense is citing says that you can't be driving a car if clear vision isn't permitted from the windshield. I don't think there's any reasonable basis to say that that crack in his windshield did not permit clear vision. And you can see that in the video. So that is a disputed fact. Does that really matter though since you concede that the stop to investigate the drug deal was okay? I think that matters to the extent that the defense is arguing any traffic stop allows an officer to run somebody's license and registration. So my position in this case is that it wasn't a traffic violation type stop, it's for this drug dealing suspicion. And so once that is done and you've verified there's nothing suspicious about a drug deal here, then the person should be let go without running their license and registration. I'll pause here at this time and reserve any of my remaining time for rebuttal. Thank you. Thank you, Ms. Messimer. Mr. Haraldson? Thank you, Your Honor. May it please the court, I'm John Haraldson. I represent the city of Des Moines in this matter. I think that what the plaintiff is engaging here is somewhat the sort of post-event 2020 hindsight that has been specifically forbidden by the court since Graham v. Conner. It is true that in retrospect that Mr. Haynes was not a threat to the officers and at the time that they were encountering him, they may have believed that the risk of danger was relatively low. But at the time that they had stopped him, they were given information by a third officer using the collective knowledge doctrine that there had been a suspicion of a drug transaction. And I think that the precedent from the Eighth Circuit and from courts and other courts have been pretty clear that suspected drug transactions in Terry stops are particularly dangerous. And those are the kind of things that are distinguished from other cases that the plaintiff has relied upon in their argument about the reasonableness of handcuffing. Counsel, the problem I have with that argument has nothing to do with what you've said so far. But the brief in this case completely ignores anything and everything that happens after the frisking. Well, what happens after the frisking is that one officer is left alone with Mr. Haynes while the other officer checks as officers are allowed to do for the duration of stop, check background information. This is an individual that did not have an official admitted that he did not have a driver's license. But he was an unarmed individual. An unarmed individual who was, at the time when Officer Steinkamp went back to his car, was left one-on-one with another police officer. So then in that case, you need to identify some articulable facts for the use of this force. On page 22 of your brief, you assert that no force was used by the officer. I think it's pretty clear under our precedent that handcuffing is force. I believe that, yeah, I believe that is admittedly a misstatement of the record. He was handcuffed for a seven and a half minute period of time. During the period of time that she was searched, during the period of time that she was left alone with the officer while Officer Steinkamp did a background search and found out that there were no warrants or violations. At which time he immediately left and told Officer Minahan to release Mr. Haynes from handcuffing. But what facts are you relying on to support the need for handcuffs after the frisk? You've got to identify something. Well, I believe that the nature of the investigation was not yet completed. It is true that from their initial review, they did not see incidents of any drug activity. But there was still a suspicious transaction related by the third officer and the lack of an identification. So it's your position, Counseless Judge Smith. Your position then is that whenever someone is pulled over with suspicion of a narcotic transaction that the person can be handcuffed, searched and then handcuffed until further investigation is done? I believe that it is a case-by-case situation from the perspective of the officers on the scene. And that's a good point to segue to because from the undisputed facts that we have recited both by defendants and the plaintiff, there was nothing that would indicate that this gentleman posed any threat to the officers or was a threat to flee or was a threat to them physically. There was no weapon present. I can certainly understand there would be situations and individuals that could arouse a degree of uncertainty by an officer about their safety. But it would seem that this is the exact kind of scenario where there wouldn't be that if this is authorized, then in essence you're authorized to do it in any case. Well, I believe that this is why cases are analyzed on a case-by-case basis. This was a period of time in which after the frisking, I believe the videotape shows approximately three and a half to four minutes ago from the time in which Officer Steinkamp reviews the record, does the background check upon which he's released, at which time he's left alone with Officer Minahan. And I believe that precedent in the Eighth Circuit has long established that it is permissible to handcuff an individual to maintain status quo during the course of the stop. And that this particular time of four minutes was reasonable to maintain the status quo while Officer Steinkamp checked his records to make sure that there was no reason for further detainment. Can you compare and contrast this case with the Gassaway case? I think the Gassaway case involved... Ill Gassaway, I should say. Ill Gassaway was not a terrorist stop. It was not a suspicion of a felonious drug transaction. It was an incident, I believe, at a jewelry store about pawned watches or whether a watch was valid. So there was a case of possible fraud, which is not typically considered to be an inherently dangerous felony. And Mr. Ill Gassaway was, I believe, handcuffed for, I believe, an extended period of time. But nonetheless, the distinction of Ill Gassaway from this case is the nature of the incident, of the suspected criminal activity, and the inherent dangerousness that courts have found in potential drug trafficking cases versus a situation such as fraud, which is... Counsel, you seem to be telling us that the dissipation of the reasonable suspicion of the drug transaction doesn't matter. That's not what I'm saying. I'm saying that at the time, I don't think the investigation... I believe the officers at the time, halfway through the handcuffing, did believe it was unlikely and they had no evidence of a drug transaction or evidence of a drug transaction being present. But at the time, they had not fully performed the background search that might indicate that there was reason to suspect that this individual without an ID may have a record of such transactions to provide further investigation and... How does that differ from if they'd stopped him for a cracked windshield then? Well, the... He still could have had outstanding warrants. He could have had outstanding warrants, but there would not have been suspicion of a crime that the courts have recognized as being inherently dangerous to... That had already dissipated by this time. I believe that... I do not believe that it was... There was still basis for continued investigation to find out if there might be further evidence to indicate that the individual may have engaged in a drug transaction simply because the drugs were no longer present. They may have been present in the individual down the street where the third officer was engaging in a simultaneous investigation and I believe the record indicates found no suspicion of that about the same time that they let Mr. Haynes out of handcuffs. So I believe that there is still reason to suspect or have suspicion until the background check was fully completed that Mr. Haynes may have... They may have reason to suspect that Mr. Haynes was engaging in a drug transaction. Don't you have to articulate some facts to support that? I haven't heard any facts articulated other than, well, there might be some warrant. Well, that they were engaging in a background check and a warrant check, an outstanding warrant check for the individual, which would have included that sort of transaction. Once they completed that warrant check and found no evidence of other criminal actions or outstanding warrants, they let Mr. Haynes out of the handcuffs immediately. That seems to reverse things. Well, until we disprove that there is reasonable suspicion, then there is. Well, I believe it all stems out of the same transaction. They still had reason to suspect that the transaction had occurred that was suspicious in a high-crime area, whereas Officer Minahan articulated to Mr. Haynes that there were several drug transactions present that they had seen. And until they had completed the background check, you could not say with certainty that there was not reasonable suspicion to believe that there may have been an illegal drug transaction occurring. If Mr. Haynes hypothetically, and of course we know that in fact this was not the case, if Mr. Haynes had exchanged what drugs were in his car for cash or provided what drugs were in his car for cash, there wouldn't be any evidence of a drug transaction in his car. But there may be evidence of him engaging in such activity, or having an outstanding warrant of such activity in the car that would have provided reason to continue an investigation. And so I do not believe that the period of time in which they maintained Mr. Haynes in handcuffs, given the case law and the inherent danger that courts have found in potential drug transactions in handcuffs, and the length and duration of it, was outside of the parameters of what courts have found to be acceptable in these cases. And the officers would have no reason to believe that they were engaging in any illegal activity by maintaining, or any unconstitutional activity, by maintaining that handcuffing period. So, which stems to the qualified immunity aspect, which has not been discussed at this point. Counsel, I don't recall what the record reflects on this, so I'll just ask, but while these officers were having contact with Mr. Haynes, did you say that another officer, or other officers had contact with the other individual that was seen on the roadside contact? That's true. The third officer who had seen the suspicious transaction, after reporting it to Officer Steinkamp and Minahan, who encountered Mr. Haynes, did go to investigate with the individual that had the cash exchange, and did relate, and near the end of the stop, I believe it might be reflected on the videotape, although I'm not, to be honest, I'm not sure it's clear in the record, Mr. Officer Garrett indicated that he had checked out the story that Mr. Haynes had provided, and that it was simply an exchange of cash, there were no drugs on the individual. So, Officer Garrett's suspicion of a drug transaction was reconciled on both ends, in about the period of time of the entire stop. So, I mean, there was investigation, but for the purposes of why Mr. Haynes was handcuffed, why there was an encounter there, it was relying on the information provided by the undercover officer who was stationed there as part of the city's summer enforcement team, because this was a high-crime area that the police had been asked to patrol by the residents of the neighborhood, and also other criminal complaints. Do you think, Counsel, do you think if Mr. Haynes had had his driver's license on him, that the situation would have been different? I believe that the testimony of Officers Menehan and Steinkamp would have made it clear that it would have proceeded much more quickly, and in the record, I believe in the videotape itself, it stated that one of the basis upon which he was put in handcuffs is for lack of a valid ID, while they checked out the background, combined with the complaint of a suspicious drug transaction. So the lack of an identification appears to have played a role in the handcuffing. What role does that play if they truly, if there was reasonable cause to believe that there had been a roadside drug, hand-to-hand drug deal, why does identification have anything to do with it? Well, I guess it would also be indicated that it's also not legal to drive without your license, but it would raise another indication of suspicion on the part of the officers of criminal activity being afoot. It is not per se indicative of an illegal drug transaction, but it does complicate the officer's ability to quickly resolve who the individual is, what they're doing, and what their background may be. In fact, in this instance, it probably delayed the matter by a couple of minutes because Officer Steinkamp had to leave the car at one point to verify the name, the spelling of his name, and numbers so he could complete the background check. So instead of taking just that fact alone, instead of being in handcuffs for 5 1⁄2 minutes, he was in handcuffs for 7 1⁄2 minutes. Instead of a 9-minute stop, it was an 11-minute stop. But it should also be indicated, I think, the stop was prolonged because of the fact that Mr. Haynes and the officers were having a friendly conversation for about the last minute of that 11-minute period. There's no doubt that Mr. Haynes was cooperative throughout, but that in and of itself is not enough to dispel all of the potential aspects of criminal activity that may have been present. But there's no doubt he was cooperative. But the officers' actions were consistent, I believe, with the existing Eighth Circuit and Iowa precedent that they did not violate any well-established constitutional right, either under federal or state law, that they did act with all due care in that regard, that the court's opinion of listing of the undisputed facts is accurate, especially pertaining to the underlying basis for the stop and the handcuffing of the duration of the stop. And so for that reason, I would ask the court to affirm the decision of the court below. Thank you, Mr. Nelson. Sure. Ms. Messimer, your rebuttal. Thank you, Your Honors. The defense says that this is 20-20 hindsight that this stop was no good, but that's not true because this law was clearly established at least very firmly with the El Gazue case in 2011, I believe that was. That case says very clearly, even though the facts of the case are distinguishable, the law in that case is clear, that if there's not a safety risk or some other particularized reason, officers cannot be putting people in handcuffs. And that's where there's the fact dispute in this case. The fact dispute is when was the suspicion dispelled? My argument is it was dispelled before he was taken out of the car and put in handcuffs. I think there are plenty of reasonable inferences that can be drawn from the facts to support that argument. And the defense, they have arguments about why the suspicion wasn't dispelled and about how maybe if there was a warrant that would matter or for some reason it matters if you have an ID. Those are arguments the defense can make to the jury and the jury can reject those or accept them. But I do think it's a red herring about this lack of identification, both because Mr. Haynes did provide identification. He provided three forms of identification, one of which had his picture on it. So there's no reasonable basis to say he's not telling the truth about who he is. And also because if he doesn't have a state ID, what does that have to do with whether or not there was a drug deal? Not having an identification doesn't mean you're a drug dealer. Those two don't correlate. And I agree with what Your Honor pointed out about this seems to be kind of flipping the burden. And I think that's true. The officers are the ones who need to come up with reasonable suspicion for the stop. It's not up to Mr. Haynes to dispel everything and say, check my ID, check and see if I have warrants, talk to all my character witnesses. That's not how these stops are supposed to go. The officers themselves have to have facts that they're building on, not these proving a negative and wondering what speculation there might be about this person and eliminating all those prospects before you're allowing someone to go and releasing them from handcuffs. And I don't really see how, you know, even if Mr. Haynes had warrants out for something, that wouldn't prove that there was a drug deal in this case. That's not a fact that is going to make that drug deal more or less likely. And in any event, the suspicion had been dispelled even before they're going to check that. Anyway, there's no reason to hold this man when the officers themselves recognize there's no safety risk. And, you know, obviously that's their subjective impression, but I think that these officers who are experienced, who worked this summer enforcement team in the higher crime areas, their own perspective on what happened here, that shows what an objective officer would also think. These officers didn't see anything that indicated he was suspicious, that indicated there had been a drug deal when they actually looked into it. And so they should have parted ways. They can't just hold people to fish around for more things. So based on those reasons, we would ask that the court reverse the grant of summary judgment and reinstate this case. Thank you. All right. Thank you, Ms. Messimer. And thank you also, Mr. Haraldson. The court appreciates both counsel with a very helpful argument to us this morning. We will combine that with the briefing and ponder this case and render a decision in due course. Thank you.